JOHNSON et al. v. ORTIZ OIL CO. et al.
No. 1657.

Court of Civil Appeals of Texas. Eastland.
April 9, 1937.

Ed Yarbrough, of Henderson, for appellants.

Tarlton Morrow, of Wichita Falls, Muse & Muse, H. Bascom Thomas, and Golden & Croley, all of Dallas, Norman & Norman, of Rusk, and Weeks, Hankerson & Potter, of Tyler, for appellees.

FUNDERBURK, Justice.

This suit originated in the county court of Cherokee county, and is an action brought under authority of R.S.1925, art. 4328, designated in said statute, a bill of review. Plaintiffs were "Horace Johnson, individually and as father, custodian and next friend of his minor children Hattie Johnson, Ruben Johnson, Vella Mae Johnson and J. H. J. Johnson and G. P. Futch as next friend of said minors." The defendants were Ortiz Oil Company, a corporation, and numerous other persons and corporations (117 in all) who for convenience will hereinafter be referred to as Ortiz Oil Company et al., or as defendants.

The decisions, orders, and/or judgments which by such action were sought to be revised and corrected were all, or practically all, that had been rendered in an entire guardianship proceeding in the probate court of Cherokee county, beginning with the order appointing Horace Johnson temporary guardian of said minor children and including orders granting applications of the guardian to sell lands, or interests therein belonging to the minors, confirming reports of sales made thereunder, etc. The county court gave judgment for the defendants and upon the appeal by plaintiffs to the district court, the latter in a nonjury trial gave judgment to the same effect. The trial judge, in response to proper request, made and filed conclusions of fact and law. Plaintiffs appealed.

Further statement of the case if necessary will be made in connection with the discussion which is to follow.

■ Plaintiffs, in their brief, assert twenty-one propositions under nineteen assignments of error. The ruling or action of the court alleged as constituting the ground of error in each of the assignments of error is of such nature as is, or should be, embraced in the conclusions (findings) of fact or the conclusions of law. Only assignments of error sixteenth to nineteenth, inclusive, make any direct reference to findings or conclusions. The only action or ruling of the court alleged as the ground of error in many of the assignments is "in rendering judgment for the defendants."

Other than fundamental error, no error is shown in the action of the court in rendering the judgment, unless there was some wrong finding of fact or conclusion of law. Ours being a court whose jurisdiction is limited to a review of errors either assigned or fundamental, it results that if the conclusions (findings) of fact and conclusions of law were within the issues made by. the pleadings and were sufficient to support the judgment of the court, then we are authorized to consider, in addition to fundamental errors, if any, only such of plaintiffs' assignments of error as embrace as the alleged ground of error some one or more of the findings of fact or conclusions of law.

We find it unnecessary to state which, if any, of the assignments are in our opinion sufficient to present questions for decision. This results from the conclusion that a fundamental error is determinative of the judgment to be rendered by this court.

The proper construction and application of R.S.1925, art. 4328, is, we think, involved in the questions presented for decision. Specifically, the question is presented whether that statute is available to the plaintiffs under the allegations of their pleadings. The statute reads: "Any person interested may, by a bill of review, filed in the court in which the proceedings were had, have any decision, order or judgment rendered by such court, or by the judge thereof, revised and corrected on showing error therein. But no process or action under such decision, order or judgment shall be stayed except by writ of injunction."

■ We think we may proceed upon the premise that whatever the meaning or scope of operation of this statute, the character of action therein authorized, whenever it is available, constitutes a direct attack, and not a collateral attack, upon the decisions, orders, or judgments sought to be revised or corrected. De Cordova v. Rodgers (Tex.Civ.App.) 67 S.W. 1042, 1043. "A direct attack on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of same in a proceeding instituted for that purpose, such as a motion for a rehearing, an appeal, some form of writ of error, a bill of review, an injunction to restrain its execution," etc. Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325, 327. "A collateral attack on a judgment is an attempt to avoid its binding force in a proceeding not instituted for one of the purposes aforesaid, as where, in an action of debt on a judgment, defendant attempts to deny the fact of indebtedness, or where, in a suit to try the title to property, a judgment is offered as a link in the chain of title, and the adverse party attempts to avoid its effect," etc. Id. These definitions we. think leave no room for argument that the action authorized by said article 4328 would constitute other than a direct attack upon the "decision, order or judgment" sought to be "revised and corrected."

■ Can the action authorized by said article 4328 be employed to adjudicate the title to land? That it may not, directly, there will be no difference of opinion. The county court wherein only the action may be brought has no jurisdiction of an action to try title to land. The Supreme Court in Pure Oil Co. v. Reece, 124 Tex. 476, 78 S.W.(2d) 932, 934, a case involving this same character of action, said concerning a guardian's deed that the probate court "was and is without jurisdiction to annul and set aside the guardianship deed above described. Only the district court, when acting as a court of original jurisdiction, can do that. Article 1906, R.C.S.; section 8, art. 5, Texas Constitution." Here the Supreme Court, in effect, affirms the proposition that an adjudication of the invalidity of a guardian's deed would be an adjudication of the title to the land, which said deed purports to convey, not within the jurisdiction of the county court.

But, if the county court has no jurisdiction to adjudge the nullity of a guardian's deed because that would amount to an adjudication of the title to land, how can it be said that such court would have jurisdiction to adjudge the nullity of an order

approving the guardian's report of the sale of the land—a link in the chain of title of the purchaser just as essential as the deed? Or, how can it be said, for that matter, that if the county court cannot adjudge the nullity of a guardian's deed, it would have jurisdiction to adjudge the invalidity of an order appointing the guardian; since such adjudication if made effective against the vendee of the guardian by his presence as a party to the action, would just as conclusively in practical effect establish the nullity of the guardian's deed?

The question we are now considering may be stated thus: When orders of a probate court, such as appointing a guardian, authorizing the sale of land or approving report of such sale are voidable upon direct attack, but not void or subject to collateral attack, and the land has actually been conveyed to parties having no interest in such orders save as they constitute links in their chain of title, is the character of action authorized by said article 4328 available to an interested party to nullify such orders with the effect that the judgment may be conclusive as an estoppel against the purchasers in a contemporaneous or subsequent action against them in the district court to try title to the land? We think this question must be answered in the negative. That the action is not universally available has already been settled. It is not available to a ward to set aside, in whole or in part, orders duly establishing claims of third parties against the estate in the hands of the guardian. De Cordova v. Rogers, 97 Tex. 60, 75 S.W. 16. Every reason, we think, supporting an interpretation of the statute to deny the action under the circumstances declared in De Cordova v. Rogers, supra, would apply with equal, or even greater force, to deny its operation against the purchasers of land deraigning title through orders or judgments of the probate court in a guardianship proceeding not void upon collateral attack, although voidable under direct attack.

Only by construing the statute as not authorizing the action under such circumstances can effect by given to the difference and reason for such difference between a direct attack and a collateral attack upon judgments. If a party seeking to establish title to land against one claiming under a sale and conveyance by the guardian may by the action in question, the purchaser being made a party, annul the orders upon which the conveyance by the guardian depends for its validity under the rules governing direct attacks on judgments it will be of no practical importance that a suit to try title must yet be brought in the district court in order to fully consummate the original purpose; since the judgment in the first action would be conclusive of the question of title. The applicable principle of law is stated thus: "If a particular point or question is in issue in the second action, and the judgment will depend upon the determination of the particular point or question, a former judgment between the same parties will be final and conclusive in the second if that same point or question was in issue and adjudicated in the first suit," etc. 34 C.J. 915, § 1325. See the many Texas cases cited in support of the text. The only purpose or necessity of the suit in the district court would be to lend a mere appearance of conformity to the constitutional and statutory provisions respecting jurisdiction. It would be true, nevertheless, that in practical effect the issue of title would be conclusively determined by the judgment of the county court.

We see no logical escape from the proposition that the action in question (the bill of review provided in said article 4328) is (1) not a direct attack on the decisions, orders, or judgments, which, it is provided by said statute may by such action be revised and corrected, or (2) the purchasers of land at guardianship sales are not necessary parties to such action, or (3) the action cannot be employed against such purchasers.

As has already been said the action, when the circumstances exist to authorize it, undoubtedly constitutes a direct attack. Only by giving to the term "direct attack" some special meaning different from the definition above quoted could the action be other than a direct attack upon the orders or judgments sought to be revised or corrected.

The most elementary concept of a "necessary party" includes such purchasers, if it be assumed that the action is maintainable against them. "A 'necessary party' to a suit, according to the general understanding of that term, is one who is so vitally interested in the subject-matter of the litigation that a valid decree cannot be rendered without his presence as a party." Commonwealth Bank & Trust Co. v. Heid Bros., 122 Tex. 56, 52 S.W.(2d) 74, 75. Pure Oil Co. v. Reece, supra, was, as said before, an action of the character under consideration, and the reason there given why certain persons were held to be necessary parties was that they "would be directly and vitally affected by any judgment rendered." That a

claimant of land whose title is deraigned through guardianship proceedings would be directly and vitally affected by a judgment annulling an essential link in his chain of title to such land, is, it seems to us, self-evident. If the action is a direct attack and the purchaser of land at the guardian sale is a necessary party, what defense can he make when brought into the action as a party? He can so far as we can see make no effective defense. Helpless, he can only witness the direct attack upon the foundations of his title, well knowing that when a little later his title is directly challenged in the district court his want of title will in practical effect have been prejudged against him, and that by judgment of the county court.

The question occurs, May not the action be maintainable, but be regarded as a collateral attack as to such purchaser? Not, we think, if the above definitions of "direct attack" and "collateral attack" are correct. And what practical purpose would be served by holding the rule of collateral attack applicable? If the "decision, order or judgment" be subject to collateral attack, why have two suits when one would be all sufficient? Suits to try title to land should be brought in the district court. Orders and judgments of the probate court, if void and subject to collateral attack, may, and we think should be, attacked in the same suit. By so doing, there would at least be avoided the anomaly of the county court being without jurisdiction of actions to try title to land and yet in practical effect exercising just such jurisdiction by conclusively adjudging void certain links in the title, thereby rendering it impossible for the claimant to establish title, or defend by proving title, in the district court. It seems to us to be far more logical to hold, and that is our conclusion, that under the circumstances stated, the action simply does not lie, is not available, and just as a remedy it was held not available in the situation presented in De Cordova v. Rogers, supra.

No reason appears why we should be inclined to give the statute a strained construction to the end that the action be available under any and all circumstances. As already said, as a remedy, it is not of universal application. Two other usually adequate means of accomplishing the same end are provided. One is by appeal, R.S. 1925, arts. 4318 to 4327, inclusive. The other is by certiorari, article 4329. To hold the action not available under the circumstances stated will not therefore have the effect of denying it any application whatever. On the contrary, there may be situations where it can be employed with important effect long after the remedy by appeal or by certiorari has ceased to be available, or in practical effect ever was available. For example, take the case of a ward, who, upon attaining legal age, has discovered, or has theretofore discovered, that his guardian has been allowed credits in orders approving his accounts to which he was not legally entitled, etc. Our interpretation of the statute would not preclude its application even against orders to sell land, provided it be brought before the consummation of the sale. The statute provides for injunction as the only means of superseding execution of the orders, decisions, or judgments to which the action applies. The example given, we think, would be an instance where the action could be employed in connection with injunction.

The next question occurs whether plaintiffs' petition in this case shows the existence of the circumstances under which the action is not available. It was not specifically and expressly alleged that all, or any of the 117 defendants, were claiming the land or interest therein through or under the guardian's sales. But that we think is the necessary import of the pleadings. The only allegations indicating the reasons for making the defendants parties to the action were "through fraudulent and false representations on the part of the aforesaid defendants [all the defendants] they being the defendants interested in obtaining the hereinafter described property from said minors, persuaded and induced the said Horace Johnson to make application * * * to be appointed guardian," etc. No cause of action, however, based upon fraud was alleged. On the contrary, the only grounds alleged for annulling the orders of the probate court, other than the above general conclusions in reference to fraudulent and false representations, were defects which if they afforded ground for a direct attack— a question we deem it unnecessary to determine—certainly afforded no ground for a collateral attack. Among the orders sought to be annulled were the orders of sale and the orders approving the reports of sale. These allegations we think show with sufficient conclusiveness that the original purchasers, or their vendees, of the land belonging to the wards in the guardianship proceeding were sought to be concluded by the judgment. Hence, plaintiffs' pleadings on the face thereof show the existence of the

circumstances under which, as we have said, the action does not lie. This presents a matter of fundamental error.

This conclusion renders it unnecessary, we think, to discuss other questions presented.

Ordinarily, when it is adjudged that plaintiffs' pleadings state no cause of action, opportunity should be given for the plaintiffs to exercise the right to amend, but here, if our conclusions be correct, the plaintiffs, according to the allegations of their own petition, have and can have no right of action and therefore none could be alleged. It is therefore our opinion that the judgment of the trial court should be reversed and the cause dismissed, the costs of appeal as well as the costs of the trial court to be adjudged against the appellants. It is accordingly so ordered.